*Ty Webb, LLC v. Mayor and City Council of Baltimore, Maryland, et al.*, No. 942, September Term, 2020.  Opinion by Wright, Alexander, Jr.


**TAXATION – PROPERTY TAXES – REDEMPTION FROM TAX SALE – ACTIONS TO FORECLOSE RIGHT OF REDEMPTION – PROCESS OR NOTICE**


Circuit court erred in dismissing appellant's complaint to foreclose the right of redemption on real property that had been sold pursuant to a tax sale.  Specifically, the court abused its discretion in finding that appellant's attempts at serving process on an interested party were insufficient; that appellant had made "insufficient showings" as to whether alternate service pursuant to Maryland Rule 14-503(b) and 2-122 was appropriate; and that appellant's "skip trace," which had been conducted in May of 2018 as part of appellant's request for alternate service, had become "stale."  The record showed that appellant had made a reasonable and good faith effort at notifying the interested party of the action and that, consequently, alternative service pursuant to Md. Rule 14-503(b) and 2-122 was appropriate.  In addition, although the skip trace was arguably "stale" when the court issued its ruling in October of 2019, the skip trace was not stale when appellant requested alternate service in May of 2018.  The court should have considered the adequacy of the skip trace based on when the request was made, not when the court ultimately ruled on the request more than one year later.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 942

September Term, 2020

---

TY WEBB, LLC

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE, MARYLAND, ET AL.

---

Nazarian,
Gould,
Wright, Alexander, Jr.
   (Senior Judge, Specially Assigned),

JJ.

---

Opinion by Wright, J.

---

Filed: May 27, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case stems from a complaint, filed in the Circuit Court for Baltimore City, seeking to foreclose the right of redemption on real property that had previously been sold pursuant a tax sale. The court ultimately dismissed the complaint on the grounds that the plaintiff, Ty Webb, LLC ("Webb"), had failed to properly serve all named defendants. In this appeal, Webb presents a single question for our review:

Did the circuit court err in dismissing the complaint?

For reasons to follow, we hold that the circuit court erred in dismissing Webb's complaint. We, therefore, reverse the court's judgment.

## BACKGROUND

On May 15, 2017, Thornton Mellon, LLC ("Mellon"), purchased, by way of a tax sale, real property known as 4406 Saint Georges Avenue, Baltimore, Maryland (the "Property"). The City of Baltimore subsequently issued a tax sale certificate to Mellon.

On November 27, 2017, Mellon filed, in the Circuit Court for Baltimore City, a Complaint to Foreclose Right of Redemption regarding the Property. The named defendants included, among others, the Property's previous owner, Christopher Updike ("Updike"). Attached to the complaint was an Affidavit of Search and a 40-year property search report, which showed Updike's address as 4406 Saint Georges Avenue. The complaint also included an Affidavit of Compliance, which showed that a copy of the complaint had been sent via certified mail, return receipt requested, to Updike. On April 6, 2018, the court issued a Writ of Summons for all defendants, including Updike.

On June 28, 2018, Mellon filed a Motion Requesting Waiver of Alternative Service, or in the Alternative, Alternative Service Granted *Nunc Pro Tunc*. In that motion, Mellon

asked the circuit court to "waive alternative service as to any defendant." Mellon further asked that the court grant "alternate service via publication, posting, certified mail, and regular mail;" that "said alternative service be granted *nunc pro tunc* to the date said methods were already previously made on all defendants;" and that the court issue an order foreclosing all rights of redemption to the Property.

Along with its motion, Mellon filed an Affidavit with Respect to Service, Non-Service, Posting, and Maryland Code (2019 Repl. Vol.), Tax-Property Article ("TP") § 14-839(a)(4). In that filing, Mellon indicated that notice of the complaint had been published in The Daily Record for three consecutive weeks beginning on April 17, 2018, and that, on May 12, 2018, a copy of the complaint and relevant documents had been physically posted at the Property. Mellon also indicated that, on April 14, 2018, a copy of the court's summons had been sent via certified mail, restricted delivery, to Updike at 4406 Saint Georges Avenue. Mellon included, as an attachment, a copy of the return receipt, which had been returned, unsigned. Mellon also indicated that a process server had attempted to personally serve a copy of the summons on Updike at 4406 Saint Georges Avenue on May 12, May 21, and May 28, 2018. According to that affidavit, all service attempts were unsuccessful.

Mellon also filed an Affidavit of Additional Diligence, which stated that a "skip trace" had been performed "through Clear, an online database of Thomson Reuters." According to the attached report, which was dated May 31, 2018, the only known address for Updike was 4406 Saint Georges Avenue.

On July 28, 2018, Mellon filed a Motion for Order Foreclosing Rights of Redemption & Request for Hearing. In that motion, Mellon asked the court to issue an order foreclosing all rights of redemption as to the Property.

On August 27, 2018, the circuit court denied Mellon's Motion for Waiver of Alternative Service on the grounds that Mellon had "failed to state the name of the Defendant upon whom alternate service is requested." The court also denied Mellon's Motion for Order Foreclosing Rights of Redemption.

On September 13, 2018, Mellon filed a response to the court's order denying the Motion for Waiver of Alternative Service. Mellon also filed a Motion for Alternate Service, specifying Updike as one of the defendants for whom Mellon was requesting alternative service.

On February 28, 2019, the circuit court issued an order denying Mellon's Motion for Alternate Service. The court found that Mellon had "failed to serve the Defendant Christopher Updike as required by [Md.] Rules 14-503(a) and 2-121." The court stated that Mellon "must make additional attempts at service and/or additional searches as follows: good faith efforts to locate Defendant at addresses derived from database searches using a search engine recognized by the legal community as producing reliable results." The court added that there was "no evidence that reasonable efforts have been made to locate the Defendant."

Mellon thereafter filed a Response to Order, which included the Affidavit of Additional Diligence that Mellon had filed on June 28, 2018. Mellon also filed a Renewed Motion for Order Foreclosing Rights of Redemption.

On September 9, 2019, Mellon assigned its interest in the matter to Webb. Webb, as the substituted plaintiff, subsequently filed its own Renewed Motion for Order Foreclosing Rights of Redemption.

On October 23, 2019, the circuit court issued an order denying Webb's Renewed Motion. The court also denied the Motion for Alternate Service. In so doing, the court found that Webb had "failed to serve the Defendant Christopher Updike as required by [Md.] Rules 14-503(a) and 2-121." The court also found that Webb had made "insufficient showings" as to whether alternative service pursuant to Md. Rule 14-503(b) was appropriate. The court found that Webb needed to "make additional attempts at service and/or additional searches as follows: good faith service at the address derived from database searches and at any address known to the attorney or the Plaintiff." Regarding Webb's attempts at personal service, the court found that "a database search dated May 31, 2018 is stale and unlikely to produce current addresses for the Defendant."

In the months that followed, Webb filed multiple motions seeking an order to foreclose all rights of redemption as to the Property, yet all of those motions were subsequently denied by the court on the grounds that Webb had failed to serve Updike. During that time, Webb also filed multiple responses to the court's orders denying the motions. In those responses, Webb reiterated the efforts it (by way of Mellon) had made at serving process on Updike.

On October 22, 2020, the circuit court issued an order dismissing the case. The court cited Webb's failure "to comply with the Court's Order dated October 23, 2019." This timely appeal followed.

4

## DISCUSSION

### *Webb's Contentions*[1]

Webb contends that the circuit court erred in dismissing the case on the grounds that Updike had not been properly served. Webb maintains that its efforts at effectuating service upon Updike were sufficient under the relevant statutes and Md. Rules and that, consequently, dismissal was inappropriate. We agree.

### *Standard of Review*

Maryland Rule 2-507(b) provides that "[a]n action against any defendant who has not been served . . . is subject to dismissal as to that defendant at the expiration of 120 days from the issuance of original process directed to that defendant." The decision whether to dismiss an action for failure to serve process is reviewed for abuse of discretion. *Flanagan v. Department of Human Resources*, 412 Md. 616, 631 (2010).

### *Analysis*

When, as here, a property is purchased pursuant to a tax sale, "[c]ertain interested parties retain a right to satisfy the lien and redeem the property[.]" *Voltolina v. Property Homes, LLC*, 198 Md. App. 590, 598 (2011); *see also* TP § 14-827. A court may subsequently foreclose the interested party's right of redemption upon the filing of a complaint by the tax purchaser and the issuance of process and public notice by the court. *Voltolina*, 198 Md. App. at 598-99; *see also* TP §§ 14-833 to 14-844. During the course of those proceedings, certain due process requirements must be met, including that the

---

[1] No appellee brief was filed.

interested party be given notice. *Voltolina*, 198 Md. App. at 599. "Failure of procedural due process deprives the court of jurisdiction[.]" *Id.*

"However, 'it is well settled that due process of law is not violated in application because the interested party did not receive actual notice.'" *Id.* (citing *Griffin v. Bierman*, 403 Md. 186, 206 (2008)). "The constitutionality of a particular notice mechanism is not to be judged by its actual success . . . but turns instead on whether the chosen method is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Voltolina*, 198 Md. App. at 599-600 (citations and quotations omitted).

In addition to constitutional due process, an interested party is afforded certain procedural safeguards by the TP Article of the Md. Code. *Id.* at 601. TP § 14-836 provides, in pertinent part, that notice of the proceeding must be posted at the subject property and must also be sent, via certified mail, to the interested party. TP § 14-836(b). TP § 14-840 provides that notice of the proceeding must be published in a newspaper having general circulation. TP § 14-840. TP § 14-840 also provides that "[w]hen the order of publication is issued and published, any person that has any right, title, interest, claim, lien, or equity of redemption in the property is bound by the judgment of the court that may be passed in the case as if the person were personally served with process." *Id.*

Those procedural requirements have since been modified with the adoption of Chapter 500 of Title 14 of the Maryland Rules. *Voltolina*, 198 Md. App. at 601. Md. Rule 14-503 states that, upon the filing of a complaint to foreclose a right of redemption and the issuance of a summons by the court, process "shall be served in accordance with [Md.]

Rule 2-121 on each defendant named in the complaint whose whereabouts are known."

Md. Rule 14-503(a). Under Md. Rule 2-121, service of process may be made by personally

delivering the requisite papers to the defendant; by leaving the papers at the defendant's

home with someone of suitable age; or by mailing the papers by certified mail requesting

restricted delivery. Md. Rule 2-121(a). If proof is made that the defendant acted to evade

service, the court may order that service be made by mailing the requisite papers to the

defendant's last known address and leaving the papers with a person of suitable age at the

defendant's place of business. Md. Rule 2-121(b). If proof is made that good faith efforts

to personally serve the defendant have not succeeded and that service under section (b) "is

inapplicable or impracticable, the court may order any other means of service that it deems

appropriate in the circumstances and reasonably calculated to give actual notice." Md.

Rule 2-121(c).

When, on the other hand, a defendant's whereabouts are unknown, Md. Rule 14-

503 requires that notice of the proceedings "be served in accordance with [Md.] Rule 2-

122." Md. Rule 14-503(b). Md. Rule 2-122 states, in pertinent part:

> **(a) Service by Posting or Publication.** In an *in rem* or *quasi in rem* action
> when the plaintiff has shown by affidavit that the whereabouts of the
> defendant are unknown and that reasonable efforts have been made in good
> faith to locate the defendants, the court may order service by the mailing of
> a notice to the defendant's last known address and:
>
> (1) by posting the notice by the sheriff at the courthouse door or on a
> bulletin board within its immediate vicinity; or
>
> (2) by publishing the notice at least once a week in each of three successive
> weeks in one or more newspapers of general circulation published in the
> county in which the action is pending; or

7

(3) in an action in which the rights relating to land including leasehold interests are involved, by the posting of the notice by a person authorized to serve process in accordance with Rule 2-123(a) in a conspicuous place on the land.

Additionally, the court may order any other means of notice that it deems appropriate in the circumstances.

Md. Rule 2-122(a).

Finally, the question of whether a defendant's whereabouts are "known" or "unknown," and thus the question of whether service must be made in accordance with Md. Rule 2-121 or 2-122, can hinge upon the reasonableness of the plaintiff's efforts to serve process on the defendant at his last known address. As we explained in *Voltolina, supra*:

> . . . . [A] complainant's knowledge of even a "correct" residential address does not necessarily mean that the defendant's "whereabouts" are known. . . . Thus, discovery of a defendant's address will initially mean that the defendant's "whereabouts" are known, but when reasonable and good faith attempts to serve process at that address fail – and if no other facts provide constructive knowledge of a reasonable way to serve the defendant – then the only valid conclusion can be that the defendant's "whereabouts" revert to being unknown.

*Voltolina*, 198 Md. App. at 608 (footnote omitted).

Against that backdrop, we hold that the circuit court erred in dismissing Webb's complaint on the grounds that Webb had failed to comply with the court's order dated October 23, 2019. Specifically, we hold that the court, by way of its order from October 23, 2019, erroneously found that Webb had made "insufficient showings" as to whether alternative service on Updike pursuant to Md. Rule 14-503(b) was appropriate. We also hold that the court erroneously found that Webb needed to "make additional attempts at

8

service and/or additional searches," and that Webb's "skip trace" dated May 31, 2018, was "stale" and unlikely to produce a current address for Updike.

First, it is clear from the record that Webb, in attempting to notify Updike of the proceedings, did everything that was required under the law. Upon filing its complaint to foreclose right of redemption in November of 2017, then-plaintiff Mellon conducted a 40-year property search, which revealed Updike's address as 4406 Saint Georges Avenue. Mellon then sent a copy of the complaint via certified mail, return receipt requested, to Updike at that address. Later, when the court issued its summons for Updike, Mellon sent a copy of the summons via certified mail, restricted delivery, to Updike at 4406 Saint Georges Avenue. Mellon then published notice of the complaint in The Daily Record for three consecutive weeks and posted a copy of the complaint and relevant documents at the Property. Mellon also attempted, on three separate occasions, to personally serve a copy of the summons on Updike at 4406 Saint Georges Avenue. Around that same time, Mellon conducted a "skip trace," which showed that the only known address for Updike was 4406 Saint Georges Avenue.

Given those facts, all of which were presented to the circuit court in June of 2018 by way of affidavit, it is clear that Webb had made a reasonable and good faith effort at notifying Updike of the action. It is equally clear that, at that time, Updike's whereabouts were "unknown" and that, consequently, alternative service pursuant to Md. Rule 14-503(b) was appropriate.

Despite those facts, however, the court concluded, by way of its order dated October 23, 2019, that Md. Rule 14-503(b) had not been satisfied, and that Webb was required to

9

make additional attempts at service and/or additional searches to ascertain Updike's address. Those conclusions were erroneous. We are unable to discern any justifiable reason, legal or otherwise, as to why Webb's efforts were "insufficient" or why Webb needed to conduct additional searches or service attempts.

We likewise fail to comprehend why the circuit court dismissed Webb's skip trace from May 31, 2018 as "stale" and unlikely to produce a current address. Although the skip trace from May of 2018 was arguably "stale" when the court ruled on Webb's motion in October of 2019, the skip trace was not stale when the motion was filed.[2] The court should have considered the adequacy of the skip trace based on when the motion was filed, not when the court ultimately ruled on the motion more than one year later. In addition, the court, in determining the adequacy of the skip trace, should have credited Webb's other efforts at effectuating service, all of which occurred contemporaneously with the skip trace. In short, reasonable efforts were made in good faith to locate Updike. *See* Md. Rule 2-122(a). The court should have accepted those efforts and permitted service pursuant to Md. Rule 14-503(b) and 2-122.[3]

---

[2] We note that Webb's skip trace laid dormant not because of any failure on behalf of Webb but because the circuit court waited a significant time before addressing the matter. *See generally State Center, LLC v. Lexington Charles Ltd. Partnership*, 438 Md. 451, 610 (2014) (noting that, in a court of equity, "stale" claims or demands are disfavored because the court requires "reasonable diligence" on the part of the party asserting the claim or demand).

[3] While in this case we reverse the erroneous dismissal of a tax sale foreclosure, nothing herein should be interpreted to undermine the broad discretion of the circuit court under Rules 2-121 and 2-122 to decide, for example, what constitutes a "good faith" effort at personal service, the "reasonableness" of plaintiff's efforts to serve defendants at the last

In fact, given that Webb had mailed notice of the action to Updike's last known address, published notice in The Daily Record, and posted notice at the Property, the service requirements of Md. Rule 14-503(b) and 2-122 had already been satisfied when the court issued its order dated October 23, 2019. Therefore, rather than dismissing Webb's complaint, the court should have accepted that service already had been accomplished and permitted the action to proceed. In failing to do so, the court abused its discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

---

known address, and what alternative forms of notice are "appropriate in the circumstances."